# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ANDERS TRON-HAUKEBO, | No. 60526-1-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, WASHINGTON STATE FERRIES, | |
| Respondent. | |

CHE, J. — Anders Tron-Haukebo appeals the trial court's order dismissing his claims alleging violations of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), the Washington Law Against Discrimination (WLAD), and denial of due process.[1]

In 2023, the Washington State Department of Transportation (WSDOT) and Washington State Ferries (WSF) (collectively, the Defendants) hired Tron-Haukebo as a probationary employee under the position title, "On Call Terminal." Several days into the employee orientation process, Tron-Haukebo failed a practical exam, and the Defendants terminated his probationary employment. Tron-Haukebo requested that the Defendants employ him as a traffic guide, but the Defendants declined.

---

[1] 42 U.S.C. §§ 12101-12213; 29 U.S.C. § 623(a); ch. 49.60 RCW.

Tron-Haukebo filed suit, alleging the Defendants failed to reasonably accommodate his disabilities, discriminated against him based on his age, and violated his due process rights by failing to offer him a pre-termination hearing. The Defendants moved under CR 12(b)(1) to dismiss the ADA and ADEA claims and under CR 12(b)(6) to dismiss Tron-Haukebo's WLAD and due process claims. The trial court granted the motion.

On appeal, Tron-Haukebo argues the Defendants failed to reasonably accommodate his disabilities under the WLAD by refusing to offer him employment as a traffic guide. He also requests attorney fees and costs. We hold Tron-Haukebo fails to make a prima facie showing for failure to accommodate under the WLAD. Further, we hold that the Defendants are immune from Tron-Haukebo's ADA and ADEA claims. Finally, we decline to consider Tron-Haukebo's right to jury trial and due process claims. We also deny his request for attorney fees on appeal.

Accordingly, we affirm.

FACTS

The WSF is a division of the WSDOT. On March 28, 2023, WSDOT hired Tron-Haukebo as a probationary "On Call Terminal" employee with WSF. Clerk's Papers (CP) at 68. The probationary appointment was expressly "contingent upon successful completion of the new hire Orientation," among other things. CP at 68.

According to Tron-Haukebo, this meant that he would be working either as a ticket seller or a traffic guide. Ticket sellers sit in terminal booths and distribute tickets to customers in return for payment. Traffic guides direct drivers to parking areas while they await boarding and to particular lanes for loading and unloading. Traffic guides must be aware of pedestrian, vehicle, and railway traffic. In the past, traffic guides have been struck by vehicles.

No. 60526-1-II

Tron-Haukebo attended orientation training for several days. On his first day, he asked an individual in the front row of the classroom "to trade places saying the reason for asking is / was his hearing disability." CP at 15. At some point, Tron-Haukebo asked instructors if he could bring training materials home to study, but his request was denied.

On April 3, as part of the orientation process, Tron-Haukebo underwent an Electronic Fare System (EFS) assessment. He scored 80 points out of 100 on his written assessment but only 60 points out of 100 on his practical assessment. As a result, his total score was 70%, and he failed the assessment. The instructor noted that Tron-Haukebo's "tech. knowledge [was] low," which "led to retention & comprehension issues." CP at 70 (capitalization omitted). The instructor further noted, "At times very attentive, other times, very distracted (could be hearing, tried to acknowledge him & speak loudly, sometimes to the detriment to class flow)." CP at 70 (capitalization omitted).

Because Tron-Haukebo failed the ESF assessment, WSF terminated his employment, effective April 4. WSF explained, in a letter dated May 16, that the termination occurred during "Terminal Orientation." CP at 72. WSF also explained that it terminated Tron-Haukebo "pursuant to the Inlandboatmen's of the Pacific Union Collective Bargaining Agreement, Rule 31.01." CP at 72. The text of the rule cited in letter stated:

> Newly hired employees shall serve a probationary period equal to one thousand, forty (1,040) compensated hours. Such employees may be terminated during the probationary period or at the end of a probationary period for a bona fide reason(s) relating to the business operation and said employee shall not have recourse through the grievance procedure.

CP at 72 (italicization omitted).

Tron-Haukebo requested that he be assigned to the role of traffic guide, but his request was denied. Tron-Haukebo also requested to be scheduled for the next classroom training session and was denied. The Defendants informed Tron-Haukebo that he would have to reapply in order to attempt orientation again. According to WSDOT, at the time of his termination, Tron-Haukebo had no medical file recorded and had not provided any materials or made a request for accommodations related to a hearing disability.

On August 21, 2024, after at least three prior unsuccessful lawsuits related to this matter, Tron-Haukebo filed another complaint against the Defendants.[2] Although Tron-Haukebo cited only to the ADA as a basis for his lawsuit, in the header of the complaint, he wrote, "Complaint for violation of the American Disabilities Act Complaint for violation of Washington State anti-discrimination laws." CP at 11. Tron-Haukebo argued that he was disabled and denied reasonable accommodations, and that he was a member of a protected class based upon his age, alleging that he was born in the 1940's. He stated that he had a hearing disability, that "older learners may require adaptive measures to learn material," and that because of his age, the Defendants should have "adjusted the manner and mode of his training and/or offered other employment opportunities to" him. CP at 17. Specifically, he asserted he should have been offered employment as a traffic guide. He also contended that he was deprived of a "termination hearing-interview," in violation of his due process rights. CP at 17.

The Defendants moved to dismiss Tron-Haukebo's suit under CR 12(b)(1) and (6). The Defendants argued that the trial court should dismiss Tron-Haukebo's ADA claim under CR 12(b)(1) because they were immune from the suit under the Eleventh Amendment. They further

---

[2] Each of Tron-Haukebo's prior lawsuits was dismissed without prejudice on pretrial motions.

argued that the court should dismiss Tron-Haukebo's WLAD claim under CR 12(b)(6). At the hearing on the Defendants' motion, the trial court seemed to assume that Tron-Haukebo's complaint included an ADEA claim based on his allegations involving age.[3] *See* 1 Rep. of Proc. (RP) at 8 ("You make a direct reference to the ADA. . . . You obliquely refer to the ADEA based upon your age"). The court also interpreted Tron-Haukebo's complaint as raising a reasonable accommodations claim under the WLAD. *See* 1 RP at 11 (Again stating that Tron-Haukebo "obliquely" referenced the WLAD and raised claims alleging discrimination based on age and disability as well as failure to reasonably accommodate).

On December 27, the trial court granted the Defendants' motion to dismiss, with prejudice. The trial court considered Tron-Haukebo's complaint as well as matters outside the pleadings.[4] It dismissed Tron-Haukebo's ADA and ADEA claims based on Defendants' sovereign immunity under the Eleventh Amendment. And the trial court ruled that because Tron-Haukebo was a probationary employee at the time of his termination, he was not entitled to a pre-termination hearing or interview. With regard to Tron-Haukebo's reasonable

---

[3] Tron-Haukebo did not appear to raise an age-based discrimination claim under WLAD, and he did not confirm for the court that he intended to raise such a claim. *See* 1 RP at 11.

[4] The trial court apparently considered Tron-Haukebo's complaint, the Defendants' motion to dismiss, several exhibits attached to a declaration filed in support of Defendants' motion to dismiss, Tron-Haukebo's "Affidavit-Declaration filed December 4, 2024, and Memorandum filed November 13, 2024," and the Defendants' reply. CP at 9. Neither Tron-Haukebo's December 4 affidavit nor his November 13 memorandum was designated as part of the record on appeal, and thus, they are not before this court for review.

accommodation claim under the WLAD, the trial court ruled that Tron-Haukebo was not qualified to perform the essential functions of the job at issue.[5]

Tron-Haukebo appeals.

## ANALYSIS

### I. Reasonable Accommodation Under the WLAD

The primary basis for Tron-Haukebo's suit and subsequent arguments on appeal appears to be his claim that the Defendants violated the WLAD by failing to provide him with a reasonable accommodation for his disability. He contends that after he was terminated for failing his practical assessment, the Defendants were obligated to offer him employment in a different position as a reasonable accommodation.[6] The Defendants respond that Tron-Haukebo cannot show a WLAD violation because he is not a "qualified individual" and that even if he was, the Defendants had no obligation to offer him employment in a different position because doing so was unsafe and unreasonable. Br. of Resp'ts at 13.

### A. Legal Principles

We review a trial court's dismissal under CR 12(b)(6) de novo. *Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 584, 551 P.3d 1067 (2024) , *review denied*, 4 Wn.3d 1002 (2025). However, where the trial court considers matters outside the complaint, as it did here, the CR 12(b)(6) motion converts to a CR 56 summary judgment motion. *Wiklem*, 31 Wn. App. at 584.

---

[5] Tron-Haukebo filed a motion for reconsideration, which the trial court denied. The trial court's order denying the motion was not included in Tron-Haukebo's notice of appeal, nor did Tron-Haukebo present argument pertaining to his motion for reconsideration in his briefing.

[6] Although Tron-Haukebo referenced a request to take orientation materials home to study in his complaint below, he does not renew this argument on appeal.

Because the Defendants moved to dismiss Tron-Haukebo's WLAD claim under CR 12(b)(6), and the trial court considered information outside the complaint, the Defendants' motion was converted to a CR 56 motion. Thus, we review the trial court's ruling on the WLAD claim under the summary judgment standard.

> We review a court's order on summary judgment de novo. *Id.* at 584.

> We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences. Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue.

*Id.* (internal citations omitted).

The "WLAD requires an employer to reasonably accommodate an employee with a disability unless the accommodation would pose an undue hardship." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 777, 249 P.3d 1044 (2011). And despite the liberal construction we must apply to the WLAD, summary judgment is proper "'when the plaintiff fails to raise a genuine issue of fact on one or more prima facie elements'" of their reasonable accommodation claim. *Gamble v. City of Seattle*, 6 Wn. App. 2d 883, 887-88, 431 P.3d 1091 (2018) (quoting *Johnson v. Chevron U.S.A., Inc.*, 159 Wn. App. 18, 27, 244 P.3d 438 (2010)).

> To set out a prima facie case for a failure to reasonably accommodate a disability, the plaintiff must show that (1) the employee had a sensory, mental, or physical [impairment] that substantially limited his or her ability to perform the job, and either (a) the impairment had a substantially limiting effect on the individual's ability to perform the job, the individual's ability to apply or be considered for a job, or the individual's access to equal benefits, privileges, or terms or conditions of employment or (b) the employee put the employer on notice of the impairment's existence and medical documentation established a reasonable likelihood that engaging in the job functions without an accommodation would create a substantially limiting effect; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the [impairment] and its accompanying substantial limitations; and (4) upon notice, the

7

employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the [impairment].

*Id.* at 888-89. To qualify for a reasonable accommodation in employment, "an impairment must be known or shown through an interactive process to exist in fact." RCW 49.60.040(7)(d).

B.      *Tron-Haukebo Does Not Present a Prima Facie Case of Failure to Reasonably Accommodate*

Here, even when the evidence is viewed in the light most favorable to Tron-Haukebo, the non-moving party, he fails to show a genuine issue of material fact that he was qualified to perform the essential functions of the job or that the Defendants failed to adopt measures available to them.

First, Tron-Haukebo fails to show that there is a genuine issue of fact regarding the second prima facie element of a reasonable accommodation claim—whether he was qualified to perform the essential functions of his job as an "On Call Terminal" person—nor does he show the Defendants were not entitled to judgment as a matter of law. Tron-Haukebo's employment in that position was expressly contingent upon completing the orientation process. But Tron-Haukebo failed the practical assessment administered during his orientation. Thus, Tron-Haukebo failed a condition of his contingent employment.

Tron-Haukebo alleges that within the "On Call Terminal" job title, there are at least two separate positions, specifically, ticket teller and traffic guide. But he makes no showing that he could perform the essential functions of either role, especially when he failed the "On Call Terminal" orientation assessment. Even assuming the traffic guide position is separate from the "On Call Terminal" job, Tron-Haukebo fails to show that he is qualified to perform the essential

functions of that job. Thus, the record does not reflect a genuine issue of material fact that Tron-Haukebo was qualified to perform the essential functions of the job.

Second, Tron-Haukebo fails to show a genuine issue of fact regarding the fourth prima facie element of a reasonable accommodation claim—that the Defendants failed to adopt measures that were available to them. "When an employee bases a claim on the employer's failure to reassign to a different position, the employee must prove that he or she was qualified to fill a vacant position, and that the employer failed to take affirmative measures to make such job opportunity known to the employee and to determine whether the employee was in fact qualified for such position." *Pulcino v. Federal Express Corp.*, 141 Wn.2d 629, 643-44, 9 P.3d 787 (2000).

Tron-Haukebo has made no showing that he was qualified to work as a traffic guide or in any other allegedly vacant position. As discussed above, there is no indication that the qualifications for working as a traffic guide were any different from working as a ticket teller where both roles existed under the "On Call Terminal" position, for which Tron-Haukebo was unable to complete the orientation process. *See Frisino*, 160 Wn. App. at 778 (Employers are not required to "eliminate or reassign essential job functions").

Thus, even considering the evidence in the light most favorable to Tron-Haukebo, he fails to show a genuine issue of material fact regarding one or more prima facie elements of his reasonable accommodation claim. Accordingly, the Defendants did not violate the WLAD, and they are entitled to judgment as a matter of law. *See Gamble* 6 Wn. App. 2d at 887-88, 895. Tron-Haukeob's reasonable accommodation claim under the WLAD fails as a matter of law.

To the extent Tron-Haukebo's claim also involves an alleged and unspecified mental or learning disability based on his age, we conclude his claim fails as a matter of law. Whereas Tron-Haukebo's pleadings indicated that he notified the Defendants he at least had difficulty hearing, there is no evidence that any interactive process occurred during which Tron-Haukebo disclosed a mental or learning disability to the Defendants, or even made such disability known, as required by RCW 49.60.040(7)(d).[7] Moreover, for the reasons already provided, Tron-Haukebo failed to demonstrate a prima facie case of failure to reasonably accommodate.[8]

## II. ADA AND ADEA CLAIMS

Tron-Haukebo argues the trial court erred by dismissing his ADA and ADEA claims. The Defendants respond that the trial court properly determined they were immune from suit under the Eleventh Amendment. We agree with the Defendants.

"The Eleventh Amendment prohibits suits against unconsenting states in federal court. And the 'sovereign immunity' doctrine prohibits suits against unconsenting states in state court." *Harrell v. Dep't. of Soc. & Health Servs.*, 170 Wn. App. 386, 402, 285 P.3d 159 (2012) (internal citations omitted). An exception to those immunities exists when Congress validly abrogates the immunities by validly exercising its power under § 5 of the Fourteenth Amendment. *Id.* A

---

[7] The appellate record is devoid of any medical records showing a disability.

[8] On appeal, Tron-Haukebo attempts to introduce several facts for the first time, such as his prior successful completion of an undergraduate degree. Tron-Haukebo similarly states on appeal that there were several open job positions available at the time he was terminated, some of which were less demanding than the one he was probationally hired to perform. But these facts were not presented below, and we decline to consider them. *See* RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court") and *Wolf v. State*, 2 Wn.3d 93, 109-10, 534 P.3d 822 (2023).

second exception exists where Washington waives its immunity through an unequivocal expression in statutory text. *Id.* at 403.

The trial court properly dismissed Tron-Haukebo's ADA claim because Washington has not waived its immunity from suits raised under the ADA. *See id.* at 404 (explaining that Washington enjoys sovereign immunity from ADA claims brought in state court). Likewise, to the extent Tron-Haukebo challenges the trial court's dismissal of his ADEA claim, his argument fails. *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 82-83, 91, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) (holding the ADEA is not appropriate legislation under § 5 of the Fourteenth Amendment, and therefore, does not abrogate states' sovereign immunity from ADEA claims). Accordingly, we conclude that the trial court correctly determined the Defendants were immune from Tron-Haukebo's ADA and ADEA claims.

III.  ISSUES NOT CONSIDERED ON APPEAL

*A.*     *Right to a Jury Trial*

Tron-Haukebo argues he was improperly deprived of his right to a jury trial. The State counters that Tron-Haukebo had no such right in this case because it was resolved as a matter of law based on undisputed facts.

The extent of Tron-Haukebo's argument regarding this claim reads as follows: "Plaintiff claims his right to a jury trial was violated and respectfully says this is 'settled law' in the State of Washington." Br. of Appellant at 5. He cites to the seventh amendment of the federal constitution and article one, section 21, of the Washington constitution for support. But "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration," *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998), and

here, Tron-Haukebo makes no attempt to argue application of his cited constitutional principles to the facts of his case. Accordingly, we do not consider this argument.

B.       *Due Process Right to a Pre-Termination Hearing*

We similarly decline to consider Tron-Haukebo's contention that he was improperly deprived of a pre-termination hearing or interview. Although Tron-Haukebo asserts he was entitled to such a hearing based on a reasonable expectation of continued employment, he cites to no authority in support of his argument. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none"). In any event, Tron-Haukebo gives his claim passing treatment because he provides no argument or reasoning explaining why he had a reasonable expectation of continued employment. *Holland*, 90 Wn. App. at 538. Thus, we decline to consider this claim.

IV.  ATTORNEY FEES ON APPEAL

Lastly, Tron-Haukebo appears to request fees and costs on appeal. But a party requesting attorney fees must provide "[a]rgument and citation to authority." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). Tron-Haukebo does not do so here. As a result, we deny Tron-Haukebo's request for fees and costs.

CONCLUSION

We hold Tron-Haukebo fails to make a prima facie showing for failure to accommodate under the WLAD. Further, we hold that the Defendants are immune from Tron-Haukebo's ADA and ADEA claims. Finally, we decline to consider Tron-Haukebo's right to jury trial and due process claims. We also deny his request for attorney fees.

No. 60526-1-II

Accordingly, we affirm.

A majority of the panel, having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Che, J._

Che, J.

We concur:

_Maxa, J._

Maxa, P.J.

_Lee, J._

Lee, J.